UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ENRIQUEZ PEREZ, | No. 2:17-cv-00624 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. ECF Nos. 7 and 9. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff was born on July 23, 1985 and applied for SSI benefits with an alleged onset date of January 26, 2008. Administrative Transcript ("AT") 24. In September 2010, plaintiff was found disabled as of January 4, 2010 based on residual neurological dysfunction related to a benign brain tumor. AT 114-124; see AT 17, 329. After a continuing disability review ("CDR"),

the Commissioner found plaintiff no longer disabled as of April 2013 due to medical improvement. AT 114-124. On April 3, 2013, plaintiff applied for redetermination and reinstatement of his SSI benefits, again alleging disability beginning January 26, 2008. AT 173-183. In a decision dated September 4, 2015, the ALJ determined that plaintiff's disability ended June 1, 2013.[1] AT 13-26. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated September 24, 2010. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: a brain tumor and effects of injuries to the nervous system. These impairments were found to result in the residual functional capacity such that the claimant was able to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

perform significantly less than sedentary work as it related to his ability to sustain any type of physical work activity.

3. The medical evidence establishes that, as of June 1, 2013, the claimant had the following medically determinable impairments: history of brain tumor status post brain surgery and subsequent radiation, chronic headaches, cognitive disorder, not otherwise specified and obesity. These are the claimant's current impairments.

4. Since June 1, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Medical improvement occurred as of June 1, 2013.

6. As of June 1, 2013, the impairments present at the time of CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to perform light work except is limited to frequently climbing ramps or stairs, but never climb ladders, ropes or scaffolds, and only occasionally balance. The claimant must avoid moderate exposure to excessive noise, excessive vibration, and all exposure to hazards (defined as operational control of dangerous moving machinery as well as unprotected heights).

7. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity.

8. Beginning on June 1, 2013, the claimant has continued to have a severe impairment or combination of impairments.

9. Beginning on June 1, 2013, based on the current impairments, the claimant has had the residual functional capacity to perform light work except is limited to frequently climbing ramps or stairs, but never climb ladders, ropes or scaffolds, and only occasionally balance. The claimant must avoid moderate exposure to excessive noise, excessive vibration, and all exposure to hazards (defined as operational control of dangerous moving machinery as well as unprotected heights). The claimant is also limited to simple, routine and repetitive tasks, and occasional public interaction and co-worker interaction.

10. The claimant has no past relevant work.

11. On June 1, 2013, the claimant was a younger individual age 18-49.

12. The claimant has at least a high school education and is able to communicate in English.

13. Transferability of job skills is not an issue because the claimant does not have past relevant work.

14. Beginning June 1, 2013, considering the claimant's age, education, work experience, and residual functional capacity based

> on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy.
>
> 15. The claimant's disability ended on June 1, 2013, and the claimant has not become disabled again since that date.

AT 14-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) The ALJ failed to provide a fair and full hearing for an unrepresented claimant; (2) the ALJ failed to incorporate a critical aspect of Dr. Morgan's opinion into the RFC; (3) the ALJ improperly rejected plaintiff's testimony; and (4) the ALJ's hypothetical to the vocational expert was invalid.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

or nondisability, the finding of the ALJ is conclusive, see <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. <u>Full and Fair Hearing</u>

Plaintiff argues that the ALJ failed to provide a full and fair hearing. He asserts that, given plaintiff's low average IQ and cognitive disorder, the ALJ did not sufficiently advise him of his right to representation. At his April 21, 2015 hearing, plaintiff was not represented by counsel. AT 35. At the start of the hearing, the ALJ and plaintiff had the following exchange:

> ALJ: Okay. So you've read our notices about your right to an attorney. Oh –
>
> CLMT: Yes.
>
> ALJ: -- and did you understand what you're reading and the next question is going to be did you want to waive your right to try to get counsel and then just proceed today?
>
> CLMT: Oh, I kind of just want to proceed, I guess.
>
> ALJ: Okay. Well, you do have a right to a continuance, meaning you come back at a later date if you wanted to go try to get somebody.
>
> CLMT: Well, the one thing I did, I spoke to somebody on the phone because I called in and I do see my neurologist coming up on Friday.
>
> ALJ: We'll leave the record open to get any additional records from your neurologist, okay?
>
> CLMT: Yeah, okay.
>
> ALJ: That's absolutely fine.
>
> CLMT: Okay.
>
> ALJ: All right. So what's going to happen is I'll ask you questions and then we'll – if there's anything else you want to say afterwards you can tell me, okay? You have the right to present documents or call witnesses. You're going to – we're going to call one witness for sure and that's you –
>
> CLMT: Uh-huh.

AT 34-35.

////

Plaintiff cites Hearing, Appeals, and Litigation Manual (HALLEX) I-2-6-52, which requires the ALJ to "open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved." It further provides: "If the claimant is unrepresented, the ALJ will ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation." HALLEX I-2-6-52(B) (last updated 5/4/15). The Ninth Circuit has held that "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." Lockwood v. Comm'r, 616 F.3d 1068, 1072 (9th Cir. 2010); see also Roberts v. Comm'r, 644 F.3d 931, 933 (9th Cir. 2011) (HALLEX does not carry the force of law and is not binding upon the agency).

Lack of counsel does not affect the validity of an administrative hearing unless plaintiff can demonstrate prejudice or unfairness in the proceedings. Key v. Heckler, 754 F.2d 1545 1551 (9th Cir. 1985); see Makshanoff v. Chater, 107 F.3d 16 (9th Cir. 1997) ("[I]t is well established in this circuit that a claimant has to make a showing of the resulting prejudice or unfairness stemming from the lack of counsel). Here, plaintiff had a high school education and attended some junior college. AT 43, 197, 344. He had worked as a retail cashier and a driver at an auction yard, and currently worked part-time parking cars. AT 40-41, 197. In a 2013 psychological examination, he was found to have a low average IQ and a mild cognitive disorder. AT 22, 343-351. He testified that he spent much of his time playing video games online while viewers watched remotely, often stopping to talk to viewers on a microphone, and hoped to be able to earn money doing video game tutorials. AT 37-38; see also AT 131-132. Though there is evidence plaintiff had some difficulty navigating the disability process, missing a February 2014 hearing because he was in the hospital for a headache (AT 129-134), he was able to participate meaningfully in the hearing before the ALJ as described below.

At the April 2015 hearing, plaintiff confirmed that he had read the notice about his right to an attorney. AT 34. After the ALJ informed him he could have a continuance to try to obtain counsel, plaintiff indicated he wanted to proceed. AT 34-35. The ALJ informed plaintiff that he had a right to call witnesses and present evidence, and plaintiff acknowledged these statements.

AT 36. Throughout the hearing, plaintiff provided full and coherent answers to the ALJ's questions about his daily activities, medical history, work and educational history, and why he felt he was unable work. AT 34-56. The ALJ explained that plaintiff could ask questions of the vocational expert, answered plaintiff's questions about the vocational testimony, and near the end of the hearing told him: "If there's something else you think of, just write it down and send it in." AT 56-63.

Plaintiff asserts that, as an unrepresented claimant, he was prejudiced by the ALJ's failure to fully develop the record. "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ questioned plaintiff about recent medical treatment in order to ensure an up-to-date record. AT 52. Upon learning that plaintiff had been seeing a neurologist, Dr. Woan, and received treatment at USCF, the ALJ stated: "We're going to leave the record open . . .We're going to see if we can get updated USCF records. . . . And Dr. Woan records, we're going to wait a week to get them" because plaintiff had an upcoming appointment with Dr. Woan. AT 53-54. At the close of the hearing, the ALJ stated:

> ALJ: And so we're going to get those documents and then we're going to proffer them to you, meaning we're going to send them to you. There'll be instructions on the thing that we send you and when we send the documents to you after we get them, okay?
>
> CLMT: Okay.
>
> ALJ: You just take a look at that and then it's probably the last time I'll see you unless you request to have an additional hearing after you get the records, which is your right, and usually that doesn't happen, you know, because you've already talked to me about –
>
> CLMT: Yeah.
>
> ALJ: What's going on. Okay, but you can if you want.
>
> CLMT: Okay.

AT 65-66. The record shows that the ALJ obtained treatment evidence dated one week before the April 21, 2015 hearing (AT 462) and later obtained the post-hearing treatment records from Dr. Woan (AT 449-451).

////

Plaintiff argues that the ALJ's failure to request a functional capacity statement from Dr. Woan "illustrates that the ALJ failed to fulfill his duty to fully and fairly develop the record." (ECF No. 19 at 17.) However, plaintiff has not shown prejudice or unfairness resulting from a lack of counsel, nor has he shown that the medical evidence considered by the ALJ was ambiguous so as to require further development of the record.

B. Medical Evidence

Plaintiff asserts that the ALJ improperly discounted a portion of the opinion of psychologist Dr. Robert Morgan, who in April 2013 performed a consultative examination of plaintiff as part of the agency's review of whether plaintiff's disability had ceased. AT 343-351. Dr. Morgan found plaintiff to have "fair" abilities as to activities of daily living, social functioning, the ability to concentrate and persist in work-related activities at a reasonable pace, and the ability to interact with coworkers, supervisors, and the public. AT 350. Dr. Morgan also found plaintiff to have a fair ability to travel to work and "deal with normal pressures in a competitive work setting." AT 350. Dr. Morgan found plaintiff to "present with a satisfactory ability to understand, carry out and remember simple one or two step instructions," while having mild to moderate impairment in his ability to carry out detailed or complex instructions. AT 350. He assessed plaintiff's GAF at 55-60.[2] AT 349.

The ALJ afforded Dr. Morgan's opinion "great weight," adding:

> Specifically, the overall evidence supports that the claimant would experience difficulties that were more complex than those that were simple, routine, and repetitive. Upon examination, the claimant's working memory was no more than the low average range, and he demonstrated a moderate level of impairment with complex calculations. Nonetheless, during his neurological examination, the claimant's memory was noted to be intact. Additionally, his concentration and attention were intact for basic, rudimentary addition and subtraction, and his thought processes were coherent, cohesive, organized and logical. Further, the undersigned gives some credence to the claimant's reports that he sometimes forgot what he was saying in the middle of a conversation, or that he forgot

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

8

> what people told him. Accordingly, the claimant should have no more than occasional public interaction and co-worker interaction to prevent potential communication difficulties.

AT 23. The ALJ afforded the GAF score assessed by Dr. Morgan only limited weight, finding that it "offers little insight on the overall severity of his mental impairment." AT 24.

Plaintiff argues that the RFC's limitation to "simple, routine, repetitive tasks" does not adequately capture Dr. Morgan's opinion. However, Dr. Morgan opined that plaintiff had "satisfactory ability to understand, carry out and remember simple one or two step instructions" and "mild-moderate impairment in his ability to understand, carry out and remember detailed or complex instructions." AT 350. The RFC is not inconsistent with Dr. Morgan's opinion. See also AT 407, 425 (state agency physician Dr. Klein, having reviewed Dr. Morgan's findings, found plaintiff "able to understand and remember simple 1-2 step, detailed, and complex instructions" in October 2013 report); AT 396 (state agency physician Dr. Balson, having reviewed the medical evidence, found plaintiff "not significantly limited" in the ability to understand, remember, and carry out very short and simple instructions); AT 23.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that an RFC adequately captures restrictions related to concentration, persistence, or pace when the assessment is consistent with restrictions identified in the medical testimony. See also, e.g., Schmidt v. Colvin, No. 2:12-cv-00016 KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25,

2013) ("'Moderate' mental limitations are not necessarily inconsistent with an RFC for 'simple' tasks, as long as such assessment is generally consistent with the concrete restrictions identified in the medical evidence."), citing Stubbs-Danielson, 539 F.3d at 1174. Here, the RFC limitation to "simple, routine, repetitive tasks" is generally consistent with the restrictions identified in the medical evidence, and the court finds no error on this basis.

### C. Credibility

Plaintiff next claims that the ALJ improperly found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "not credible to the extent they are inconsistent with the residual functional capacity assessment." AT 20.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ found that the "objective record and reports of the claimant's daily activities are not entirely consistent with his allegations of incapacitating symptoms." AT 20. He explained:

> The claimant reported frequent headaches that [he] described as having an intensity between eight and nine out of a high of ten, however, during recent examinations, the claimant noted an improvement in his level of pain with medication from an intensity of a four out of ten, to an intensity of three out of ten (B19F/2-7)[3]. The claimant reported being unable to physically exert himself without experiencing dizziness or feeling as though he was going to pass out, however, he indicated that he generally did not wear the glasses prescribed to correct this problem, and noted that he was able to read text on his computer screen when streaming his video games online.[4] He noted that he was unable to sustain any activity full-time, however, noted that he took full-time course load at the local college for one semester, and stopped because he wanted to try engaging in work, not because he was [un]able to maintain the schedule.[5] Finally, the claimant reported that he sometimes needed to lean on objects or the wall when walking, however, upon examination, he had normal balance, gait, coordination, and fine motor skills (B19F/2).[6]

AT 20. As to daily activities, the ALJ noted that plaintiff cared for his dog, did his own grocery shopping, and was able to prepare simple meals and do light cleaning. AT 16.

---

[3] The ALJ cited treating neurologist Dr. Woan's reports of February and April 2015, noting pain scores of 3/10 and 4/10. AT 450, 453.

[4] Plaintiff testified that he wore glasses "outside of home" for distance vision, but did not need them for reading text up close when he played video games. AT 38-39.

[5] Plaintiff testified that he "went [to school] for a semester and then I wanted to see if I could try to go full-time to work[.]" AT 40.

[6] In April 2015, Dr. Woan found plaintiff to have normal balance and gait, coordination, and fine motor skills. AT 450.

Reviewing the medical evidence, the ALJ noted that plaintiff's headaches had improved with medication, that he did not undergo regular psychological treatment for his cognitive disorder, and that examinations in 2014 and 2015 found him fully oriented with no agitation, anxiety, fear, or forgetfulness, and possessing normal memory, balance, gait, coordination, speech, and fine motor skills. AT 21, 22. Based on the foregoing, the court concludes that ALJ used the proper process and provided proper reasons to discount plaintiff's credibility.

D. Vocational Hypothetical

Lastly, plaintiff takes issue with the ALJ's hypothetical questions to the vocational expert, arguing that the RFC omitted critical limitations as set forth in plaintiff's earlier claims. As plaintiff has not established that the RFC was invalid, the court finds no error in the hypothetical posed by the ALJ and resulting in a finding of nondisability. See AT 25, 57-58.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is granted; and

3. Judgment is entered for the Commissioner.

Dated: August 16, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/perez0624.ssi.ckd